UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

I.P. ENTERPRISES PENSION FUND,
SAND HILL ROAD VENTURE GROUP,
SAND HILL ROAD VENTURE ONE, and
I.P. ENTERPRISES,

                Plaintiffs,

                Case No. 06-11162

v.

                HON. GEORGE CARAM STEEH

RICHARD HATFIELD, ALLIANCE
FINANCIAL CAPITAL, INC., JENNIFER M.
MOORE, INDUSTRY FUNDING
CORPORATION, and ALLIANCE
FINANCIAL CAPITAL HOLDINGS, INC.,

                Defendants.

_____/

## ORDER GRANTING DEFENDANT JENNIFER M. MOORE'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Doc. #7)

      Plaintiffs filed suit in this court against defendant Jennifer M. Moore asserting

tortious interference with a contract between plaintiffs and Moore's ex-husband and

business partner.  Because plaintiffs are unable to meet their burden of showing that

due process requirements permit this court to exercise jurisdiction over this California

resident, Moore's motion to dismiss for lack of personal jurisdiction is granted.

      This case arises out of a series of promissory notes totaling $1,702,161.87

issued to the defendant Alliance Financial Capital, Inc. ("AFC") by the plaintiffs I.P.

Enterprises Pension Fund, Sand Hill Road Venture Group, Sand Hill Road Venture One,

and I.P. Enterprises.  Plaintiffs' May 6, 2006, complaint alleges that AFC is in default

and has breached its duty to make payments on the notes. The complaint demands

judgment against AFC and its owner and president, Richard Hatfield ("Hatfield"), who plaintiffs claim helped negotiate the notes in Michigan and personally guaranteed them. Plaintiffs also included a claim of wrongful or tortious interference with contractual relations against defendant Jennifer M. Moore ("Moore"), alleging that she wrongfully and maliciously caused Hatfield to stop payment on the notes.

Presently before the court is Moore's May 1, 2006, motion to dismiss the claim against her for lack of personal jurisdiction. Moore claims that any of her actions regarding the notes are insufficient to bring her under the purview of Michigan's limited personal jurisdiction statute. Moore also claims that even if she does meet the requirements of the statute, a Michigan court's exercise of personal jurisdiction over her would violate constitutional due process limitations.

<u>FACTUAL BACKGROUND</u>

It is undisputed that defendant Moore was born in California and has lived there her entire life. (Moore Decl. ¶ 2.) It is also undisputed that defendants Moore and Hatfield lived together for over thirteen years and had two children together. (Moore Decl. ¶ ¶ 6, 7.) They had a marriage ceremony on July 4, 1990, but were not legally married under California law because they failed to obtain a marriage license. (Moore Decl. ¶ 6.) Before they separated in 2001, Hatfield and Moore started AFC, a factoring business. (Moore Decl. ¶ 8.)

Although Moore asserts that Hatfield had complete charge of all executive activity for AFC, (Moore Decl. ¶ ¶ 8-11), Hatfield has attested that Moore performed managerial duties for the business, including activities related to the negotiation of the notes at issue in this case, (Hatfield Decl. ¶ ¶ 3-5). Further, Moore claims that she has

2

only visited Michigan once in her lifetime for a vacation trip in September 2000, (Moore Decl. ¶ 2), while plaintiffs allege that she has visited Michigan on at least three occasions for purposes of conducting business with the plaintiffs on behalf of AFC, (Hatfield Decl. ¶ 3; Slager Decl. ¶ 3).

On January 30, 2006, Judge Clifford V. Cretan in the Superior Court for San Mateo County, California, issued a tentative decision determining that all property acquired by Hatfield and Moore after July 4, 1990, was owned equally by each party, despite the fact that the two were not legally married.  On February 6, 2006, Hatfield's family law attorney, Robert J. Bruening, wrote Moore's attorney, James H. Seymour, stating that Hatfield would be unable to pay child support in the amount ordered because AFC's clients, upon learning that Moore had a one-half interest in the business, were demanding their investments back.  On February 15, 2006, Seymour wrote a letter to Hatfield's other attorney who was representing him in the property dispute, Martin M. Eisenberg, regarding the issue of child support.  Seymour wrote the letter to Eisenberg instead of Bruening because Eisenberg handled matters concerning AFC and its lenders.  (Seymour Decl. ¶ 5.)  The purpose of the letter, according to Seymour, was to "neutralize and rebut Hatfield's contention that he could no longer pay his child support and to push for payment of the support." Id. The relevant portion of the letter states:

> Hatfield has ceased paying his child support on the alleged ground that the private lenders are demanding repayment of their 'loans,' and that he cannot afford child support.  As you know, and we have discussed with Judge Cretan, it is Moore's position that private lenders hold notes bearing usurious rates of interest. Consequently, any payment of 'interest' received by a private lender is legally a repayment of principal.  Many, if not all, of the private lenders, have been fully repaid or more than repaid.

3

> Until an audit of each of the private lender transactions can be completed, Moore demands that Hatfield make no further payment to any private lender. Please advise me immediately, whether or not Hatfield will agree not to make any further payments. Otherwise, I shall seek relief from the Court.

Hatfield claims that he ceased making payments to the plaintiffs on the notes as a result of Seymour's letter because Moore asserted ownership of at least 50% of the stock in AFC pursuant to Judge Cretan's ruling and was an officer of the corporation. (Hatfield Decl. ¶ 8.) However, Seymour attests that Hatfield neither refused nor agreed to stop payments to lenders and allow an audit as requested by his letter. (Seymour Decl. ¶ 5.)

On April 5, 2006, Moore filed suit in Superior Court for the County of San Mateo against Hatfield and, among approximately seventy other AFC noteholders, the plaintiffs in the instant lawsuit, claiming that the interest payment terms of each of the promissory notes issued to AFC are usurious and in violation of the California Constitution, Article XV, Section 1(2).

## STANDARD OF REVIEW

The plaintiff bears the burden of establishing the existence of personal jurisdiction. Serras v. First Tennessee Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); Weller v. Cromwell Oil Co., 504 F.2d 927, 929 (6th Cir. 1974)). The level of plaintiff's burden depends upon the procedure used by the district court in deciding the issue. Serras, 875 F.2d at 1214.

> If the court rules on written submissions alone, the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, "by affidavit or otherwise [,] . . . specific facts showing that the court has jurisdiction." When the trial court has determined that the motion to dismiss for lack of personal jurisdiction can be decided upon these written

4

submissions, it "must consider the pleadings and affidavits in the light
most favorable to the plaintiff."

Id. (quoting Welsh v. Gibbs, 631 F.2d 436, 439 (6th Cir. 1980), cert denied, 450 U.S.

981 (1981)) (citations omitted).  The plaintiff, then, is merely required to make a "prima

facie showing that personal jurisdiction exists."  Id.

The federal district court possess long-arm jurisdiction only in accordance with the

long-arm statute of the state in which it sits.  Fed. R. Civ. P. 4 (e).  Thus, a federal court's

reach of personal jurisdiction in diversity actions is determined by the long-arm statute of

the forum state.  S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 376 (6th Cir.

1968).  The reach of the state's long-arm statute, however, is limited by the due process

clause of the federal constitution.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S.

286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Int'l Shoe v. Washington, 326 U.S. 310, 66

S.Ct. 154, 90 L.Ed. 95 (1945).  The long-arm statutes of many states are considered to

be coextensive with due process, thus merging the two inquiries into one.  See, e.g.,

Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Foundation, 297 F.3d 1343,

1350 (Fed. Cir. 2002) (noting that the "Kansas long-arm statute authorizes exercise of

jurisdiction to the full extent permitted by the constitution"); Bell Paper Box, Inc. v. U.S.

Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994) (Iowa); Shute v. Carnival Cruise Lines, 113

Wn. 2d 763, 771 (1989) (Washington); Johnson v. Woodcock, 444 F.3d 953, 955 (8th

Cir. 2006 (Minnesota); Time Share Vacation Club v. Atlanta Resorts Ltd., 735 F.2d 61,

63 (3d Cir. 1984) (Pennsylvania).  In Michigan, however, "[t]he coextensive nature of

Michigan's long-arm jurisdiction becomes pertinent only if the particular acts or status of

a defendant first fit within a long-arm statute provision."  Green v. Wilson, 455 Mich. 342,

5

350-51 (1997).  As a result, determining whether personal jurisdiction exists requires two

inquiries: first, whether the defendant's conduct falls within a provision of the Michigan

long-arm statutes, and second, whether the exercise of jurisdiction comports with due

process.  Id.; see also Serras, 875 F.2d at 1216 ("The duty of the court is to assure itself

that the requirements of both authorities – the state long-arm statute and the due

process clause – are met before it can assert its jurisdiction over the person of the

defendant.").

ANALYSIS

I.      Whether Defendant Moore's Actions Subject Her to Personal Jurisdiction
        Pursuant to Michigan's Long-Arm Statute

        Michigan's long-arm statutes provide that general personal jurisdiction can be

obtained over a defendant who was present in Michigan at the time that process was

served; who was domiciled in Michigan at the time process was served; or who

consents to personal jurisdiction.  Mich. Comp. Laws § 600.701.  Plaintiffs in this matter

do not contest that Moore fails to meet any of these requirements and therefore is not

subject to general jurisdiction in Michigan.  (Pl. Br. in Opp'n at 4.)

        The long-arm statutes also provide for limited personal jurisdiction over

individuals.  Michigan's limited personal jurisdiction statute states, in pertinent part:

> The existence of any of the following relationships between an individual
> or his agent and the state shall constitute a sufficient basis of jurisdiction
> to enable a court of record of this state to exercise limited personal
> jurisdiction over the individual and to enable the court to render personal
> judgments against the individual or his representative arising out of an act
> which creates any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing any act to be done, or consequences to occur, in

6

the state resulting in an action for tort.

Mich. Comp. Laws § 600.705.

      A.    <u>Whether Moore Meets the Requirements of Section 600.705(1)</u>

Plaintiffs argue that Moore should be subject to personal jurisdiction because she transacted business within the state of Michigan.  The Michigan Supreme Court has held that the "transaction of any business within the state . . . includes 'each' and 'every.' . . . It comprehends 'the slightest.'"  <u>Sifers v. Horen</u>, 385 Mich. 195 (1971). Plaintiffs have alleged that Moore traveled to Michigan on three occasions to negotiate the terms of the notes with the plaintiffs.  Viewing the facts in the light most favorable to the plaintiffs, it appears that Moore has transacted business within the state.

However, "[t]he concept of 'limited personal jurisdiction' recognizes that the claim must arise out of the act or acts which create the basis for jurisdiction."  <u>Lazzaro v. Charlevoix Lakes</u>, 108 Mich. App. 120, 123-24 (1981).  Here, even if defendant Moore participated in the negotiation of the promissory notes in the state of Michigan and therefore qualifies as having transacted business within the state, it would be improper for this court to assert jurisdiction over her in this matter for an entirely separate act. The cause of action at issue in this case – wrongful or tortious interference with a contract – is not predicated on the fact that Moore helped to negotiate the notes or transacted business within the state.  Rather, the facts supporting the plaintiff's cause of action against Moore deal only with Seymour's letter and its effect on Hatfield's breach of the note terms.  Thus, Moore cannot be subject to limited personal jurisdiction in Michigan pursuant to section 600.705(1).

      B.    <u>Whether Moore Meets the Requiements of Section 600.705(2)</u>

7

Plaintiff's second argument is that Moore falls under Michigan's limited personal jurisdiction statute because she "[did] or caus[ed] any act to be done, or consequences to occur, in the state resulting in an action for tort."   Mich. Comp. Laws § 600.705. The elements of tortious interference with a contractual relationship are (1) a contract, (2) a breach, and (3) instigation of the breach without justification by the defendant.  Tata Consultancy Svcs. V. Systems Int'l, Inc., 31 F.3d 416, 422 (6th Cir. 1994).  Most importantly, such a claim "must allege the intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights."  Feldman v. Green, 138 Mich. App. 360, 369 (1984).  Under this theory, plaintiffs must claim that Moore's causing the letter to be sent to Hatfield was done "intentionally, without just cause, or excuse" and "for unworthy or selfish purposes," which resulted in a breach of the contracts between Hatfield and the plaintiffs.  Id. at 374 (quoting Wilkonson v. Powe, 300 Mich. 275, 282-85 (1942)).  Further,

> [m]erely to persuade a person to break his contract may not be wrongful in law or fact; still, if the persuasion be used for the indirect purpose of injuring the plaintiff, or benefiting [sic] the defendant at the expense of the plaintiff, it is a malicious act, which, in law and in fact, is a wrongful act, and therefore an actionable act, if injury issues from it.

Morgan v. Andrews, 107 Mich. 33, 39 (1895).

Defendant Moore contends that her actions do not satisfy the requirements for a claim of tortious interference under Michigan law.  She argues that the letter to Hatfield merely "sought a review of the lawfulness of the payments under usury law" and that "it sought only to ensure that the corporate defendants were not burdened by unlawful

8

payments, so that Hatfield would have funds to pay child support."  Plaintiffs, on the other hand, contend that the letter was without justification or excuse.  They argue that the statements about California usury law were not made in good faith because California usury law clearly does not apply to the notes in this case.  They also argue that Moore was not entitled to divert AFC's corporate funds for the payment of personally owed child support.  That argument fails because Seymour's letter addressed only Moore's position that the interest rates on the notes were usurious.  Although the indirect purpose of his letter was to free up money for Hatfield to pay child support, that has not been alleged as a "justification" for the letter by defendant.

Whether or not the letter meets the requirements for tortious interference under Michigan law, however, is ultimately a question of the merits of this case.  "Particularly where the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits," as here, "a trial court should not require plaintiffs to mount 'proof which would, in effect, establish the validity of their claims and their right to the relief sought."  Serras, 875 F.2d at 1215.  Plaintiffs therefore do not have to meet their burden of proving tortious conduct.  Moreover, courts in Michigan have held that "any nexus between transaction and tort shall allow limited personal jurisdiction to operate."  Brabeau v. SMB Corp., 789 F. Supp. 873, 876 (E.D. Mich. 1992).  Finally, the Michigan Supreme Court has held that "[a] prima facie case [of tortious interference with a contract] is established when plaintiff proves the intentional procurement of a breach of contract, and, upon such proof, it becomes incumbent upon defendant to show justification."  Wilkinson, 300 Mich. at 282.  Because plaintiffs have alleged an unjustified and wrongful action by Moore, and because the letter did in fact demand and

9

potentially cause a breach of the promissory notes by Hatfield, plaintiffs have met their burden of showing that Moore falls under section 600.705(2) of Michigan's limited personal jurisdiction statute.

II.     Whether a Michigan Court's Exercise of Personal Jurisdiction Over Moore Would Offend the Fourteenth Amendment's Guarantee of Due Process of Law

The court's next inquiry is whether, notwithstanding the application of Michigan's long-arm statute, exercising jurisdiction over Moore in this case would offend the Fourteenth Amendment guarantee of due process of law.  "A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." World-Wide Volkswagen Corp., 444 U.S. at 291 (citing Pennoyer v. Neff, 95 U.S. 714, 732-33 (1878)).  In order to comport with due process and support an exercise of personal jurisdiction, "minimum contacts" must exist between the nonresident defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  This requirement of minimum contacts with the forum state serves the dual purposes of "protect[ing] the defendant against the burdens of litigating in a distant or inconvenient forum" and "act[ing] to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." World-Wide Volkswagen, 444 U.S. at 292.

The Sixth Circuit has outlined three criteria for exercising personal jurisdiction over nonresident defendants in diversity cases within the bounds of due process:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.

10

Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

S. Mach. Co., 401 F.2d at 381; see also LAK, Inc. v. Deer Creek Enters., 885 F.2d

1293, 1299 (6th Cir. 1989).

    A.    Whether Moore Purposefully Availed Herself of the Privilege of Causing a Consequence in Michigan

The first and most important requirement in the due process analysis is that the

defendant must purposefully avail herself of the privilege of causing a consequence in

the forum state.  See LAK, Inc., 885 F.2d at 1300 ("The first criterion . . . is the sine qua

non for in personam jurisdiction.") (citing S. Mach. Co., 401 F.2d at 381-82).  It is

absolutely "essential that there be some act by which the defendant purposefully avails

itself of the privilege of conducting activities within the forum State, thus invoking the

benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).

'Purposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities.  The defendant will have reason to foresee being 'haled before' a Michigan court.

Audi AG And Volkswagon of America, Inc. v. D'Amato, 341 F. Supp. 2d 734, 742 (E.D.

Mich. 2004).  Moreover, the defendant's ties to the forum state should be "systematic

and continuous," Int'l Shoe, 326 U.S. at 320, not merely "random, fortuitous, or

attenuated," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quotations

omitted).  Mere foreseeability that a consequence might occur in the forum state, by

itself, "has never been a sufficient benchmark for personal jurisdiction under the Due

11

Process Clause." <u>World-Wide Volkswagen</u>, 444 U.S. at 296 (rejecting jurisdiction for a products liability suit in Oklahoma where the defendant automobile dealers, doing business in New York, could have foreseen the possibility of car accidents in that state). Instead, "the defendant's conduct and connection with the forum state" must be such that he should reasonably anticipate being haled into court there." <u>Id.</u> at 297.

The brunt of Moore's argument is that Seymour's letter, by itself, does not establish a sufficient contact with Michigan to warrant exercise of personal jurisdiction over her. She argues that "unless the alleged monetary injury in Michigan resulted from the defendant's entry into Michigan and exercise of the privilege of doing business here, then an alleged financial injury in Michigan is irrelevant." Because Moore could be subject to personal jurisdiction even if she had never entered the state, plaintiffs correctly note that this argument is too broad. However, plaintiffs wrongly assert that the letter alone serves to establish jurisdiction over Moore by fulfilling the "purposeful availment" standard as discussed below.

Letters and phone calls to the forum state have received continuous skepticism from the courts in this circuit. In <u>LAK, Inc.</u>, for example, an Indiana partnership was sued for breaching a contract to sell Florida real estate to a Michigan corporation. 885 F.2d 1293. The defendants had communicated with the plaintiffs while the plaintiffs were in Michigan but the contract was negotiated in Florida. The Sixth Circuit held that "[t]he telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends strike us as precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the <u>Burger King</u> Court rejected as a basis for haling non-resident defendants into foreign jurisdictions." 885 F.2d at 1301. Likewise, in <u>AM Diagnostics, Inc. v. Denney</u>,

12

810 F. Supp. 887 (E.D. Mich. 1993), the court held that "telephone calls alone are insufficient to convey personal jurisdiction," where one of the defendants was sued by a company's shareholders for conspiring to sell to another company and steal the company away from its shareholders.  See also Market/Media Research, Inc. v. Union-Tribune Publishing Co., 951 F.2d 102, 105 (6th Cir. 1991) (holding that a newspaper publisher's telephone calls and mail to a market researcher in Ohio were insufficient to satisfy due process requirements where it was being sued for breach of contract and damage to business relationship for refusing to finance a market research demonstration project); Doebler v. Stadium Prod. Ltd., 91 F.R.D. 211, 215 (W.D. Mich. 1981) (holding that defendant's few letters and phone calls to Michigan regarding his obligations to perform services in Illinois did not subject him to personal jurisdiction in Michigan).  In the same way, the entirely intrastate letter from Seymour to Hatfield, absent any other purposeful or intentional action toward Michigan, is too attenuated of a link from Moore to the plaintiffs in Michigan. Moore's contacts with the plaintiffs in Michigan through the letter were neither systematic nor continuous.  Mere foreseeability that consequences would occur in Michigan as a result of the letter is insufficient where Moore had no additional contacts to the state.  Furthermore, because the letter was not purposefully directed solely toward the Michigan plaintiffs in this case, but instead referred to approximately seventy of AFC's noteholders, this court can hardly determine that Moore intended to lay herself open to suit in every state from which AFC had been issued a promissory note.  Ultimately, Moore could not have reasonably anticipated being "haled into court" in Michigan.  Plaintiffs have therefore failed to meet their burden of showing that Moore satisfies the first requirement of the due process inquiry because

13

she has not purposefully availed herself of the privilege of causing a consequence in Michigan.

      B.    <u>Whether the Cause of Action Arises from the Defendant's Activities Causing the Consequence in Michigan</u>

The next requirement of due process is that the defendant's contacts with the state "must emanate from the nexus of facts leading to [the] lawsuit." <u>AM Diagnostics</u>, 810 F. Supp. at 895. The plaintiffs' cause of action does allege that Moore's action of sending the letter to Hatfield through her attorney caused an injury to plaintiffs. As discussed earlier, the letter in this case represents defendant Moore's only conduct complained of by plaintiffs, and that conduct obviously has no nexus to Moore's prior contacts with Michigan. Because Moore does not meet the first requirement, however, a detailed discussion of this second inquiry is unnecessary.

      C.    <u>Whether the Consequences Caused by Moore Have a Substantial Enough Connection with Michigan to Make the Exercise of Jurisdiction Over Her Reasonable</u>

Even if Moore established sufficient contacts to Michigan through the letter to the plaintiffs, there is validity to her argument that this court's exercise of jurisdiction over her would be unreasonable. In order to determine whether exercise of personal jurisdiction over a nonresident defendant would be reasonable and consistent with "fair play and substantial justice," the court must consider 1) the burden on the defendant, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several States in furthering fundamental substantive social policies. <u>World Wide</u>

14

Volkswagen, 444 U.S. at 294.

Here, the burden on the defendant would be great. Moore has attested that she could not "bear the expense of defending this action in Michigan or the loss of income that would be cause having to appear there." (Moore Decl. ¶ 20.) The state of Michigan surely has an interest in protecting its citizens from a breach of contract, but the notes in this case were issued to a California company and bore no substantial connection to the state of Michigan. Second, as defendant Moore points out, two of the plaintiffs in this case are Sand Hill businesses that are incorporated in the British West Indies and not in Michigan. Third, Moore has filed suit against all AFC noteholders in Superior Court in California. Because plaintiffs have done business in California before, it appears that it would not be unduly burdensome or inconvenient for plaintiffs to bring suit against Moore in California. It would also be more efficient for all of Moore's claims against the plaintiffs to be adjudicated by the same forum as plaintiffs' claims against Moore. Plaintiffs still have the opportunity to continue this suit against Hatfield in Michigan. Even though the court has already determined that Moore does not have sufficient contacts with Michigan, its consideration of these factors weighs even further in favor of dismissing the plaintiffs' claims against her for lack of personal jurisdiction.

CONCLUSION

15

For the reasons given above, the court hereby GRANTS defendant Jennifer M.

Moore's motion to dismiss for lack of personal jurisdiction.

IT IS SO ORDERED.

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  August 14, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on August 14, 2006, by electronic and/or ordinary mail.

s/Josephine Chaffee
Secretary/Deputy Clerk

16